IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01064-REB-MEH

CHARLES LOWELL KENTZ,

    Plaintiff,

v.

LIEUTENANT BORJA, and
LIEUTENANT MOLINA, Special Investigation Supervisors of FCI – Florence, Colorado, each sued personally and in their individual capacities,

    Defendants.

---

# RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [filed January 7, 2009; docket #29]. Because Defendants submitted evidentiary materials in support of their motion, the motion was converted to a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 [docket #44]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. LCivR 72.1.C, the matter has been referred to this Court for recommendation. The matter is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons set forth below, the Court recommends that Defendants' motion be **granted**.[1]

---

[1]Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate

## BACKGROUND

Plaintiff initiated this *Bivens*[2] action on May 21, 2008, and filed an Amended Complaint on May 27, 2008, alleging that Defendants "endorsed and utilized unethical and unlawful means to obtain false and incriminating information against the plaintiff and his partner" in violation of the Fifth and Eighth Amendments to the U.S. Constitution. Docket #4 at 3. Specifically, the Plaintiff asserts that Defendant Molina, under the direction of his supervisor, Defendant Borja, threatened Plaintiff with bodily harm if Plaintiff refused to give Molina information regarding the plans and intentions of his "Surreno Buddies." *Id.* At the same time, Plaintiff alleges that Lt. Molina threatened to "bring the plaintiff under a federal indictment for Financing the Introduction of Hazzardous [sic] Contraband into the facility if the plaintiff did not state that his domestic partner and inmate, Derrick Scott, extorted $8,000 from him," although, according to Plaintiff, there was no evidence of contraband and Mr. Scott "has a legal right to the funds in question." *Id.* at 4.

While the Plaintiff acknowledges that his arranging for an $8,000 wire transfer to Mr. Scott's father and the distribution of $2,000 of those funds to other inmates constitute a violation of prison regulations, Plaintiff contends that such acts do not constitute the conduct necessary to issue a federal indictment nor to warrant placement in administrative detention. *Id.* Additionally, Plaintiff asserts that when the Defendants confiscated the funds that were to be distributed to other inmates, they placed Plaintiff and Mr. Scott "in harms way and in danger of losing life or limb." *Id.* at 5.

As to administrative remedies, Plaintiff alleges in his Amended Complaint that he was "obstructed" from obtaining administrative relief because the prison staff and the BOP declined to

---

Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2]*See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

address the issues "pending an investigation."

Defendants responded to Plaintiff's Amended Complaint by filing the within motion, asserting that the Court lacks jurisdiction because Plaintiff failed to properly exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA) and, alternatively, that Defendants are entitled to qualified immunity for Plaintiff's failure to state a claim upon which relief can be granted. With respect to administrative remedies, Defendants argue that Plaintiff filed only one grievance regarding his claims, which was received on May 14, 2008 and rejected as not following the proper procedure. That is, the grievance Plaintiff submitted was initiated at the national level (BP-11 form) without having gone through the local and regional levels first. Defendants assert that, although the grievance was procedurally rejected, Plaintiff had the opportunity to bring the grievance through the proper channels as he had done on several occasions in the past.

In response, Plaintiff asserts that he attempted to bring his grievance at the local level by completing the informal resolution process and BP-9 form in early May 2008 and sending it to the proper authority; however, Plaintiff asserts that the form was lost by prison staff. In support of his argument, Plaintiff attaches a memo from a prison staff member dated May 13, 2008, stating that she could not attach Plaintiff's requested supplement to the BP-9 form he referenced since she could not locate a BP-9 filed by Plaintiff. At the same time, the Plaintiff attaches a copy of a BP-9 form he completed and dated May 24, 2008; however, in such form he mentions nothing about a previously filed or lost BP-9 form regarding the same claims. Nevertheless, Plaintiff states that the May 24 grievance was rejected because it did not contain evidence of the informal resolution process, which the Plaintiff contends was lost by prison staff. Thus, Plaintiff argues the prison obstructed his attempts to pursue the prison grievance procedure and, therefore, requests an order that the exhaustion requirement be waived.

As to the merits of Plaintiff's claims, Defendants contend that the facts do not rise to the level of constitutional violations under the Fifth and Eighth Amendments and, therefore, the Defendants are entitled to qualified immunity. Plaintiff responds that the alleged threats made by Lt. Molina "were very degrading, humiliating and intimidating so as to establish the objective component requirement of an Eighth Amendment violation, because the psychological harms sustained . . . are more than *de minimus*." Plaintiff contends that threats of sodomy and criminal indictments against him, his companion and his companion's father, in addition to placement in the Special Housing Unit separated from his companion, are enough to demonstrate more than *de minimus* psychological injury. Plaintiff makes no argument regarding his claim under the Fifth Amendment.

## **DISCUSSION**

**I.     Standard of Review**

  A. Dismissal under Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that

4

there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006).

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

B. <u>Dismissal of a *Pro Se* Plaintiff's Complaint</u>

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The court should not be the *pro se* litigant's advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on

5

the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## II. Analysis

Even drawing all inferences in the light most favorable to him, I find that Plaintiff has failed to show any genuine issue of material fact against Defendants that would justify permitting this case to proceed. Plaintiff alleges violations of the Fifth and Eighth Amendments based upon threats made by Defendant Molina, under the direction of Defendant Borja, in April 2008. Defendants argue that the Plaintiff has failed to exhaust his administrative remedies and, alternatively, that the Plaintiff's allegations do not rise to the level of constitutional violations.

### A. Legal Requirement to Exhaust Administrative Remedies

The administrative remedies provision of the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. § 42 U.S.C. 1997e(a).

The Supreme Court has determined "exhaustion is mandatory under the PLRA" and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 918-19 (2007). The exhaustion of administrative remedies need not be pleaded in the complaint but must be raised as an affirmative defense. *Jones*, 127 S. Ct. at 921. The rules governing the process for fulfilling the administrative remedy obligation are not articulated by the PLRA but are defined by the respective prison grievance process. *Id*. at 922. In order to "properly exhaust" in satisfaction of the PLRA requirement, the plaintiff prisoner must comply with all prison grievance procedures. *Id*. at 922-23; *see also Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (finding that the PLRA exhaustion

requirement "demands compliance with an agency's deadlines and other critical procedural rules"). Therefore, according to *Jones*, claims that have not progressed through the prison grievance process may not be brought in court.

For federal prisons, the Code of Federal Regulations establishes the Bureau of Prison's Administrative Remedy Program as the requisite prison grievance process. 28 C.F.R. §§ 542.10-19 (2008). This program requires four steps. First, the inmate must attempt informal resolution of the concerning issue by presenting it to staff, before submitting a Request for Administrative Remedy. Wardens are responsible for establishing informal resolution procedures. 28 C.F.R. § 542.13 (2008). Second, the inmate may make an initial filing of a formal written Administrative Remedy Request on a specified form, Form BP-9, within 20 calendar days after the date giving rise for the issue of concern. *Id.* at § 542.14. The inmate can get a Form BP-9 from institution staff. Extensions of time for filing are available if the inmate shows "a valid reason for delay" as described in this section of the regulation. *Id*. This second step includes four exceptions, namely sensitive issues,[3] DHO appeals, control unit appeals, and controlled housing status appeals. *Id*. Third, an inmate who is not satisfied with the response to her or his initial filing may submit an appeal to the Regional Director

---

[3]Specific to this case, the exception found in § 542.14 titled "Sensitive Issues" states,

> If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reasons for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

28 C.F.R. § 542.14(d) (2008).

on Form BP-10 within 20 calendar days of the date indicated on the response to the initial filing. *Id.* at § 542.15. Fourth, if the inmate is not satisfied with the Regional Director's response, he or she may submit an appeal on Form BP-11 to the General Counsel within 30 calendar days of the Regional Director's response. *Id.* Section 542.18 provides that "a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received."

Here, Defendants support their 12(b)(1) motion with a Declaration of Benjamin J. Brieschke, Attorney Advisor at the Federal Correctional Complex in Florence, Colorado, and a copy of the SENTRY Administrative Remedy Generalized Retrieval record of Plaintiff's filed administrative remedy requests. Dockets #29-3 and #29-5. Mr. Brieschke describes the Bureau of Prison's grievance procedure and the records database SENTRY, which maintains information related to inmates' administrative complaints including a listing of complaints and appeals filed by any specific inmate. The attached record lists a total of 19 administrative remedies or appeals filed by the Plaintiff since 2005. The record indicates Plaintiff filed only one remedy request during the time he was housed in Florence (at which he alleges his injuries took place)[4] – request no. 494267-A1, received May 14, 2008. According to Mr. Brieschke, the numerical extension, A1, indicates the grievance was filed at the national level. The record does not indicate the content of this grievance; however, the record shows that the grievance was rejected with the reason, "SEN," meaning that the issue raised in the grievance was not a "sensitive" issue. *See* 28 C.F.R. § 542.14(d). As demonstrated by the SENTRY record and as required by the PLRA and the C.F.R., Plaintiff's failure to file a timely administrative remedy through the proper channels provides the evidentiary basis by which Defendants now move for dismissal.

In response to Defendants' motion, Plaintiff filed a "Declaration in Support of Opposition

---

[4]The Plaintiff is currently housed at the U.S. Penitentiary - Leavenworth. *See* docket #17.

8

to Defendants' Motion to Dismiss Civil Action," including a copy of a Request for Administrative Remedy dated May 24, 2008, reflecting Plaintiff's claims as set forth in his Amended Complaint. Plaintiff attests that he did attempt to comply with the PLRA requirements by completing the informal resolution process (Step 1) and a BP-9 form (Step 2), which he states he sealed in an envelope and handed to a Correctional Officer for placement in the prison's internal mail system in early May 2008. Later, when Plaintiff attempted to file an addendum to the BP-9, he received a response from Leann LaRiva, Executive Assistant, dated May 13, 2008, stating that the records revealed he did not have any pending administrative remedy requests and permitting him to complete such request. *See* docket #33 at 3. Plaintiff states that he then completed another BP-9, dated May 24, 2008 (docket #31 at 9-10), which he submitted without evidence of completing Step 1, since that paperwork was attached to the original BP-9 and apparently lost. According to the Plaintiff, on or about June 1, 2008, a Correctional Counselor notified the Plaintiff that his May 24, 2008 BP-9 was rejected by Ms. LaRiva because it did not include the Step 1 paperwork.

Notably, Plaintiff mentions nothing in the two-page May 24, 2008 BP-9 form about a previously filed BP-9 form or any lost paperwork. In addition, in his Supplement[5] to the within motion, Plaintiff argues that he submitted the "sensitive issue" grievance, received by the Defendants on May 14, 2008, because it was allegedly not possible to obtain grievance forms on a daily basis, so he submitted his grievance on the only form he had in his possession, "a BP-231(13) form." Docket #45 at 3. Plaintiff's argument contradicts his previous statement in his Addendum to Opposition Argument, saying that the May 13, 2008 memo from Ms. LaRiva "corresponds to the

---

[5]Plaintiff submitted this Supplement as a "declar[ation] under penalty of perjury." Whether an affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.'" *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. GMC*, 770 F.2d 984, 986 (11th Cir. 1985)).

dates shown by opposing counsel for the rejection of the plaintiff's sensitive national level appeal (BP-11)." Docket #33 at 1. Plaintiff's arguments are, at best, confusing.

Nevertheless, Defendants contend that, even if Plaintiff attempted to file administrative grievances in early May 2008 or on May 24, 2008, they were filed at the time, or after, he initiated this action and, therefore, Plaintiff failed to exhaust prior to filing suit as required by the PLRA. Moreover, Defendants argue that, even if it is true that Plaintiff submitted the May 24, 2008 grievance as required under Step 2, he failed to proceed to Step 3 once he learned that the grievance was rejected. The Court agrees.

The record in this case reveals that Plaintiff executed the original Prisoner Complaint on May 5, 2008, in which he asserts that he exhausted his administrative remedies, explaining that the Unit Team did not acknowledge his informal attempts at resolution, the warden failed to address the issues, and the BOP declined to review the claim because they did not consider it "sensitive." Docket #1 at 7. The Complaint was date-stamped by this Court on May 9, 2008 and again on May 21, 2008 at which time it was docketed. Plaintiff then filed the operative Amended Complaint, which was executed on May 19, 2008 and date-stamped by this Court on May 27, 2008, at which time it was docketed. In the Amended Complaint, Plaintiff alleges that he was "obstructed" from obtaining administrative relief because the BOP "declined to address the issues, alleging only 'unable to resolve,' due to the pending investigation." Docket #4 at 5.

This Court recommends finding that Plaintiff did not attempt to exhaust his administrative remedies prior to filing this litigation. *See Bonan v. Sloan*, Civil Action No. 07-cv-02408-REB-KMT, 2008 WL 4210782, *2 (D. Colo. Sept. 11, 2008) (rejecting plaintiff's argument that he should be allowed to pursue exhaustion simultaneously with the litigation). As previously stated, the Plaintiff executed the original Complaint in this action on May 5, 2008. Plaintiff now asserts that

he filed the original BP-9 at or about the same time in early May 2008; thus, there is no evidence in the record supporting Plaintiff's allegations in the original Complaint that he exhausted his administrative remedies. In addition, at the time Plaintiff executed the Amended Complaint on May 19, 2008, the only communication Plaintiff had from the BOP regarding his grievance was the May 13, 2008 memo from Ms. LaRiva stating that he had no pending administrative remedy requests and permitting him to file such request. The information contained in the memo is directly contrary to Plaintiff's allegations in the Amended Complaint that the BOP "declined to address the issues . . . due to the pending investigation." It was only after Plaintiff filed his Amended Complaint that he attempted to resubmit the BP-9 (Step 2) on May 24, 2008.

Even if there were evidence to demonstrate that Plaintiff attempted to exhaust prior to filing this action, this Court recommends finding that Plaintiff has failed to exhaust his administrative remedies as required under the PLRA. A prisoner does not exhaust his administrative remedies when he fails to properly complete the grievance process or correct deficiencies in his grievances. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "An inmate who begins the grievance process but does not complete it is barred from pursuing a Section 1983 claim under the PLRA for failure to exhaust his administrative remedies." *Id.*

Plaintiff asserts that, on or about June 1, 2008 (within the time limit constrained in the grievance policy), he received a response to the May 24 grievance from "Ms. Velasquez" stating that Ms. LaRiva would not accept the grievance due to the lack of evidence of Step 1. At that point, according to Defendants, Plaintiff had the opportunity to proceed to Step 3 and submit an appeal to the Regional Director on Form BP-10 within 20 calendar days of the response to the initial filing. *See* 28 C.F.R. § 542.15. There is nothing in the record demonstrating that Plaintiff was blocked from pursuing the opportunity to appeal through Step 3.

Although administrative remedies may be deemed unavailable due to obstruction of the grievance process, *see Jernigan*, 304 F.3d at 1033, the Plaintiff has not demonstrated unavailability in this case. The Plaintiff simply attests that, "[b]ecause of the Administrative Remedy Coordinator's refusal to accept my resubmitted 'BP-9' after the first was lost in the internal mail system of FCI-Florence, I respectfully submit that the administrative remedies beyond an attempt at an informal resolution (BP-8) were not available to me." Docket #31 at 7, ¶ 6. However, there is no evidence nor argument that the Administrative Remedy Coordinator's rejection of the BP-9 precluded the Plaintiff from filing a BP-10 appeal to the regional director. Moreover, Plaintiff's argument that he could not proceed because prison staff "lost" his initial Form BP-8, which he could not attach to the resubmitted BP-9, is without merit. There is no evidence in the record that Plaintiff attempted to follow proper procedure and resubmit the BP-9 noting on the grievance form that the BP-8 had been lost or requesting that the informal resolution requirement be waived due to the loss of the BP-8. *See, e.g., Muhammad v. Berry*, 198 F. App'x 738, 739 (10th Cir. 2006) (unpublished) (affirming dismissal where plaintiff failed to provide evidence that he attempted to follow proper procedure and file a grievance noting that the submitted BP-8 forms could not be attached because they had been allegedly ignored); *see also* 28 C.F.R. § 542.13(b). Finally, the records reflect that Plaintiff has filed numerous grievances and appeals through the federal prison system; therefore, he has knowledge of the proper grievance procedure.

Even if the Plaintiff were to assert that a BP-10 appeal would have been "useless" under the circumstances, such is not sufficient to excuse the exhaustion requirement. *See Gonyea v. Mink*, 206 F. App'x 745, 747-48 (10th Cir. 2006) (unpublished) (citing *Jernigan*, 304 F.3d at 1032) ("Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available").

Accordingly, because I find no genuine issues of material fact for trial with respect to Plaintiff's obligations to comply with the PLRA, I respectfully recommend that Defendants' Motion for Summary Judgment be granted and that Plaintiff's claims be dismissed without prejudice for failure to exhaust administrative remedies.

**IV.     Conclusion**

Accordingly, for the reasons stated above, the Court RECOMMENDS that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), which has been converted to a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 [filed January 7, 2009; docket #29], be **granted**.

Dated at Denver, Colorado, this 11th day of March, 2009.

BY THE COURT:

s/Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge